I:\51348\Answer.wpd/BTG/smb

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ALLISON KESSLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 10 CV 7399 |
| v. | ) | |
| | ) | Chief Judge: Harry D. Leinenweber |
| BOARD OF DIRECTORS OF THE | ) | |
| 401 E. ONTARIO CONDOMINIUM | ) | Magistrate Judge: Michael T. Mason |
| ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

NOW COMES the Defendant, BOARD OF DIRECTORS OF THE 401 E. ONTARIO

CONDOMINIUM ASSOCIATION, by and through its attorneys, KEVIN W. DOHERTY,

BRIAN T. GINLEY, and DOHERTY & PROGAR LLC, and for its Answer to the Plaintiff's

Complaint, states as follows:

## I. INTRODUCTION

1. This action is brought under the Fair Housing Amendments Act, 42 U.S.C. §

3604(f)(3)(B), for the failure of a condominium association reasonably to accommodate Allison

Kessler, a resident with a physical disability, who owns a dog. Under the condominium rules,

residents are allowed to have dogs but are not allowed to enter and exit the front lobby entrance

with their dogs. Instead, dog owners are directed to use a different route through the building.

This route includes a stairway. Because of the stairs, Ms. Kessler - who uses a wheelchair -

cannot access the route.

**ANSWER:** This Defendant admits that the Plaintiff purports to bring this action under the Fair Housing Amendments Act, 42 U.S.C. § 3604(f)(3)(B). This Defendant denies that it failed to reasonably accommodate the Plaintiff. This Defendant further states that the condominium rules speak for themselves.

2. Accordingly, Ms. Kessler asked the condominium association to allow her to use the front lobby entrance as a reasonable accommodation. She also proposed another route that would enter and exit through a fire door. The association denied each request and proposed two alternative routes for Ms. Kessler to use with her dog. Each would require her to enter and exit the building through the parking garage by wheeling down a driveway designed for use by vehicles. Both alternative routes are inaccessible and dangerous. Although Ms. Kessler has told the association that the alternatives are unsafe and will not accommodate her, the association insists that she use them.

**ANSWER:** This Defendant denies that the driveway in the parking garage was designed solely for use by vehicles, denies that the proposed routes by this Defendant are inaccessible and dangerous, and denies that the routes referred to are unsafe and do not accommodate the Plaintiff. Further answering, this Defendant admits the remaining allegations contained in paragraph 2 of Plaintiff's Complaint.

3. Because Ms. Kessler rejected the routes through the garage and continues to demand an accessible and safe route, the association has issued retaliatory notices against Ms. Kessler that allege - wrongfully - that she has violated condominium rules. These notices have resulted in $850 in fines.

2

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 3 of the Plaintiff's Complaint.

4. Ms. Kessler has also asked the association for an accessible parking spot, which the association has refused.

**ANSWER:** This Defendant admits that the Plaintiff has asked for a change of her parking spot but this Defendant denies each and every remaining allegation contained in paragraph 4 of the Plaintiff's Complaint.

5. To remedy the association's discriminatory conduct, Ms. Kessler brings this action for declaratory and injunctive relief as well as damages.

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 5 of the Plaintiff's Complaint.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 42 U.S.C. § 3613(a). Plaintiff's claims for declaratory and injunctive relief are authorized under 28 U.S.C. § § 2201-02 and 42 U.S.C. § 3613(c)(1).

**ANSWER:** This Defendant admits that if this action were proper this Court would have jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 3613(a) and for the Plaintiff's claims for declaratory and injunctive relief under 28 U.S.C. § § 2201-02 and 42 U.S.C. § 3613(c)(1). This Defendant denies each and every remaining allegation contained in paragraph 6 of the Plaintiff's Complaint.

3

7.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b), because Defendant resides there and because a substantial part of the events or omissions giving rise to Plaintiff's claims arose there.

**ANSWER:**     This Defendant admits that Venue is proper but denies that this Defendant's conduct or any events give rise to the Plaintiff's Complaint.

### III. PARTIES

8.     Ms. Kessler is a 25-year-old woman who lives in Unit 2809 in the 401 East Ontario Condominiums, located at 401 East Ontario Street in Chicago. Ms. Kessler closed her unit on April 7, 2008. Ms. Kessler and her father, John Kessler, own the unit as joint tenants with the right of survivorship. Copies of the Bill of Sale, Warranty Deed and Legal Description are attached as Exhibit A.

**ANSWER:**     This Defendant admits the allegations contained in paragraph 8 of the Plaintiff's Complaint.

9.     Ms. Kessler has a spinal cord injury and is unable to walk. She relies on a wheelchair for mobility.

**ANSWER:**     This Defendant admits that the Plaintiff relies on a wheelchair for mobility. Further answering, this Defendant lacks sufficient information to form a belief about the truth of the remaining allegations contained in paragraph 9 of the Plaintiff's Complaint.

10.     Ms. Kessler is a medical student at the Northwestern University Feinberg School of Medicine. She plans to specialize in physical medicine and rehabilitation.

**ANSWER:**     This Defendant lacks sufficient information to form a belief about the truth of the allegations contained in paragraph 10 of the Plaintiff's Complaint.

4

11.     Ms. Kessler lives in the unit with her boyfriend, Benjamin Vear.

**ANSWER:**     This Defendant admits the allegations contained in paragraph 11 of Plaintiff's Complaint.

12.     Upon information and belief, the Board is, under Illinois law, the managing board of the 401 East Ontario Condominium Association ("the Association"), an Illinois corporation established under the Illinois Property Act, 765 ILCS 605. Its principle place of business is in Chicago, Illinois. Consistent with Illinois law, 765 ILCS 605/18.3, the Association is responsible for the overall administration of the condominium building, including all common areas, at 401 East Ontario Street.

**ANSWER:**     This Defendant admits the allegations contained in paragraph 12 of Plaintiff's Complaint.

## IV. <u>FACTS</u>

**A.**     **Request for a Safe Dog-Walking Route as a Reasonable Accommodation**

13.     The 401 East Ontario Condominium Rules and Regulations ("Condo Rules") permit owners to have dogs. A copy of the Condo Rules is attached as Exhibit B.

**ANSWER:**     This Defendant states that the Condo Rules speak for themselves.

14.     Under the Condo Rules, when owners enter or exit the building with their dogs, they must follow a specific route "through the dog door on the east side of the building" (the "Dog Route"). This route, which runs through the east wing of the building, includes a stairway.

**ANSWER:**     This Defendant states that the Condo Rules speak for themselves.

15.     Upon information and belief, this rule replaced an earlier rule that directed dog owners to enter and exit through the garage and garage doors.

5

**ANSWER:**    This Defendant denies each and every allegation contained in paragraph 15 of the Plaintiff's Complaint.

16.    Upon information and belief, the new Dog Route was created because dog owners raised safety concerns about entering and exiting the building through the garage.

**ANSWER:**    This Defendant denies each and every allegation contained in paragraph 16 of the Plaintiff's Complaint.

17.    In March 2010, Ms. Kessler became a dog owner. On March 15, 2010, pursuant to the Condo Rules, Ms. Kessler registered and documented her dog with the Association.

**ANSWER:**    This Defendant admits the allegations contained in paragraph 17 of Plaintiff's Complaint.

18.    Due to Ms. Kessler's disability and reliance on a wheelchair for mobility, Ms. Kessler cannot use the Dog Route, as it has a stairway.

**ANSWER:**    This Defendant states that the Plaintiff does have a disability and relies on a wheelchair and has stated that she can not use the stairway when alone.

19.    When Ms. Kessler registered and documented her dog, she notified the Association, through Rose Marie La Rocca, the Assistant Property Manager, that the Dog Route was inaccessible. She told Ms. La Rocca that needed to enter and exit the building through the front lobby, which is accessible. Herein, the route through the front lobby will be referred to as the "Lobby Route."

**ANSWER:**    This Defendant admits that the Dog Route with its stairway is inaccessible to Plaintiff when she is alone. Further answering, this Defendant denies each and every remaining allegation contained in paragraph 19 of the Plaintiff's Complaint.

20.     In the past, the Association approved use of the Lobby Route for a resident with a disability who had a service dog. Upon information and belief, that resident no longer resides in the building.

**ANSWER:**     This Defendant admits the allegations contained in paragraph 20 of Plaintiff's Complaint.

21.     The Association has refused to allow Ms. Kessler to use the Lobby Route with her dog. The Association has stated that if Ms. Kessler were to enter or exit through the lobby, it may fine her, bring suit against her to enjoin use of the lobby, file suit for possession of her unit, seek attorney's fees and costs, and/or pursue other legal recourse.

**ANSWER:**     This Defendant admits the allegations contained in paragraph 21 of Plaintiff's Complaint.

22.     The Association has proposed two alternatives. Each of these routes would require Ms. Kessler to travel through the parking garage, down the driveway, and through its garage doors to enter and exit the building with her dog. Both routes are dangerous and inaccessible. Herein, these routes will be referred to as the "Garage/Ramp Route" and the "Garage/Loading Zone Route."

**ANSWER:**     This Defendant denies that the Garage/Ramp Route and the Garage/Loading Zone Route are dangerous and inaccessible. Further answering, this Defendants admits the remaining allegations contained in paragraph 22 of the Plaintiff's Complaint.

23.     Ms. Kessler has told the Association that the Garage/Ramp Route and the Garage/Loading Zone Route are unsafe and unreasonable. However, the Association insists that she use these routes.

7

**ANSWER:** This Defendant admits that the Plaintiff has expressed her opinions regarding the alternative routes available to her, but denies that her opinions are accurate. This Defendant admits that it has requested that the Plaintiff use these alternative routes.

24. The Association has offered to have building staff accompany Ms. Kessler along the Garage/Ramp Route, purportedly to address the accessibility and safety concerns.

**ANSWER:** This Defendant admits that it has offered to have building staff accompany the Plaintiff along the Garage/Ramp Route but denies each and every remaining allegation contained in paragraph 24 of Plaintiff's Complaint.

25. Accompanying Ms. Kessler along the Garage/Ramp Route is not an acceptable or reliable solution. Staff may not be available to help on a moment's notice, which would be a gross inconvenience. Ms. Kessler does not want to be forced to find, wait for, and rely on staff in order to walk her dog. Doing so would greatly diminish Ms. Kessler's independence and dignity.

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 25 of the Plaintiff's Complaint.

26. Ms. Kessler has proposed an additional alternative route that - with modifications that she has offered to pay for - would meet her needs. Ms. Kessler would enter and exit the building through a fire door located down a recessed hallway of eight feet in length, away from pedestrian traffic. This door opens to the sidewalk and is flanked by two walls that adjoin the building. Herein, this route will be referred to as the "Fire Door Route."

8

**ANSWER:** This Defendant admits that the Plaintiff has accurately described the Fire Door Route path and that the Plaintiff has offered to pay for the modifications. Further answering, this Defendant denies each and every remaining allegation contained in paragraph 26 of Plaintiff's Complaint.

27. The Association rejected the Fire Door Route as an option for Ms. Kessler. The Association claims that use of the fire door would permit wind, rain, and snow to enter the building, and therefore cause a hazard to residents and staff.

**ANSWER:** This Defendant admits the allegations contained in paragraph 27 of Plaintiff's Complaint and further states that the Fire Door Route as proposed raises security issues and may be a violation of the City of Chicago Fire Code.

28. Because the Association will not permit Ms. Kessler to use the Lobby Route or Fire Door Route, she has not walked her dog on her own since June 20, 2010. She relies on Mr. Vear and a dog walking company she has hired to walk her dog who both exclusively use the Dog Route.

**ANSWER:** This Defendant lacks sufficient information to form a belief about the truth of the allegations contained in paragraph 28 of the Plaintiff's Complaint.

29. In summary, the Lobby Route or the Fire Door Route (with modifications to be paid for by Ms. Kessler) would meet Ms. Kessler's needs, while the routes proposed by the Association are inaccessible, dangerous, and unreasonable.

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 29 of the Plaintiff's Complaint.

9

**B.**     **Proposed Routes.**

**1.**     **Lobby Route That Meets Ms. Kessler's Needs**

30.     The Lobby Route is accessible and safe. Upon descending the freight elevator from her unit on the 28th floor down to the first floor, Ms. Kessler would maneuver through two doors to reach the lobby. Although the first door is heavy, Ms. Kessler, with some difficulty, can open it. The second door is usually opened by the lobby attendant.

**ANSWER:**     This Defendant denies that the Lobby Route is a reasonable accommodation. Further answering, this Defendant admits the remaining allegations contained in paragraph 30 of the Plaintiff's Complaint.

31.     The lobby is extremely wide and spacious. Ms. Kessler would travel through it with her dog on his leash and at her side and without passing near other residents.

**ANSWER:**     This Defendant denies each and every allegation contained in paragraph 31 of the Plaintiff's Complaint.

32.     Ms. Kessler would then pass through the double doors leading from the lobby to the sidewalk. These doors are wide and Ms. Kessler can get through them without assistance. While holding the dog's leash, she can open these doors and propel herself forward.

**ANSWER:**     This Defendant admits that the lobby doors are wide but lacks sufficient information to form a belief about the truth of the remaining allegations contained in paragraph 32 of the Plaintiff's Complaint.

33.     The total distance of this route - measured from the freight elevator - is approximately 88 feet.

10

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 33 of the Plaintiff's Complaint.

### 2. Fire Door Route That Meets Ms. Kessler's Needs

34. The Fire Door Route, with modifications, would be accessible and safe. From the freight elevator on the first floor, this route would lead through the west wing of the building and exit through a fire door.

**ANSWER:** This Defendant admits that the Plaintiff has accurately described the Fire Door Route path she has proposed but denies each and every remaining allegation contained in paragraph 34 of Plaintiff's Complaint.

35. This route is currently inaccessible because it includes two narrow and heavy corridor doors that Ms. Kessler cannot open on her own with her dog. To remedy this problem, Ms. Kessler offered to pay for the installation of automatic doors along the interior of this route, as well as other needed improvements. With these modifications, the route would be accessible for her as well as beneficial to other residents of the building.

**ANSWER:** This Defendant admits that the Fire Door Route as proposed includes two narrow and heavy corridor doors and that the Plaintiff has offered to pay for the installation of automatic doors along the interior of this route. Further answering, this Defendant denies each and every remaining allegation contained in paragraph 34 of Plaintiff's Complaint.

36. The total distance of this route - measured from the freight elevator - is approximately 115 feet.

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 36 of the Plaintiff's Complaint.

11

### 3. Garage/Ramp Route That Fails to Meet Ms. Kessler's Needs

37. The Garage/Ramp Route is inaccessible and dangerous. From the freight elevator on the first floor, this route through the west wing of the building would require Ms. Kessler to enter and exit through the garage and the garage doors while going down the driveway, all of which are designed for use by cars. The route is not intended for pedestrians or persons who use wheelchairs. The entry and exit lanes for the garage, as well as the garage doors, are only wide enough for one car plus a pedestrian, or one car plus one person using a wheelchair, or one car plus a person in a wheelchair plus a dog. Also, there is no separate walkway in this area that leads out of or into the garage. In effect, use of this route would require Ms. Kessler to walk her dog in the middle of the entry and exit lanes for the garage.

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 37 of Plaintiff's Complaint.

38. There is a short driveway immediately outside and adjacent to the garage doors, which intersects the exterior sidewalk. The driveway is pitched downward, slightly below the sidewalk, and has flared edges that lead up to both sides (the east and west sides) of the sidewalk. After exiting the garage doors, the route to the east and the route to the west are both inaccessible due to extremely steep slopes.

**ANSWER:** This Defendant admits there is a driveway which intersects with the sidewalk but denies that the route to the east and the route to the west are both inaccessible due to extremely steep slopes.

12

39.    For a route to be considered accessible under the Fair Housing Act's guidelines for accessibility, the running slope (the slope that runs with the path of travel) must not exceed 5% and the cross slope (the slope that runs perpendicular to the path of travel) must not exceed 2%.

**ANSWER:**    This Defendant states that the Fair Housing Act's guidelines speak for themselves.

40.    When exiting the garage to travel east, up the flared edge, the running slope is an average of about 8.66% and the cross slope is an average of about 3.95%. When exiting the garage to travel west, the running slope to reach the flared edge is an average of about 8.8%. Then, on the flared edge, the running slope is an average of about 5.7% and the cross slope is an average of about 4.85%.

**ANSWER:**    This Defendant denies each and every allegation contained in paragraph 40 of the Plaintiff's Complaint.

41.    If Ms. Kessler were to travel this route, she would have to push her wheelchair up these steep slopes with one hand while holding her dog's leash in the other hand, an extremely difficult task.

**ANSWER:**    This Defendant denies each and every allegation contained in paragraph 41 of the Plaintiff's Complaint.

42.    The Garage/Ramp Route would also require Ms. Kessler to descend a steep ramp inside the garage that slopes directly into the exit lane for the garage.

**ANSWER:**    This Defendant admits that the Garage/Ramp Route would require the Plaintiff to descend a ramp inside the garage that slopes into the exit lane for the garage but denies each and every remaining allegation contained in paragraph 42 of the Plaintiff's Complaint.

13

43.     For a ramp to be considered accessible under the Fair Housing Act's guidelines for accessibility, the running slope must not exceed 8.33%, the cross slope must not exceed 2%, and, in addition to other accessibility features, it must include railings.

**ANSWER:**     This Defendant states that the Fair Housing Act's guidelines speak for themselves.

44.     The average running slope of the ramp along the Garage/Ramp Route is about 11%. Plus, the ramp has no railings. Because the ramp is so steep, Ms. Kessler - when holding her dog's leash in one hand - cannot stop herself on the ramp as she accelerates into the exit lane.

**ANSWER:**     This Defendant denies each and every allegation contained in paragraph 44 of the Plaintiff's Complaint.

45.     Furthermore, a cinderblock wall to the left of the ramp restricts Ms. Kessler's view of oncoming traffic until she descends into the exit lane. The wall also constricts the ability of drivers to see Ms. Kessler as she rolls down the ramp.

**ANSWER:**     This Defendant admits the existence of a cinderblock but denies each and every remaining allegation contained in paragraph 45 of the Plaintiff's Complaint.

46.     Due to these problems, use of the ramp by Ms. Kessler would expose her to great risk.

**ANSWER:**     This Defendant denies each and every allegation contained in paragraph 46 of the Plaintiff's Complaint.

47.     Although there is a stop sign along the exit lane, just prior to the end of the ramp, as well as speed bumps along the exit lane, these measures do not eliminate the danger.

14

**ANSWER:** This Defendant admits that there is a stop sign along the exit lane, just prior to the end of the ramp, as well as speed bumps along the exit lane. Further answering, this Defendant denies each and every remaining allegation contained in paragraph 47 of the Plaintiff's Complaint.

48. After the Association proposed this route, Ms. Kessler twice tried to navigate the ramp. On both attempts, she nearly rolled into oncoming traffic and was almost hit by a car.

**ANSWER:** This Defendant lacks sufficient information to form a belief about the truth of the allegations contained in paragraph 48 of the Plaintiff's Complaint.

49. In addition, in order to even reach the garage, this route would require Ms. Kessler to navigate through five doors. The first door is heavy, but with a lot of effort Ms. Kessler can open it. The second door is routinely opened by the lobby attendant for all residents. However, Ms. Kessler would need assistance opening the third, fourth and fifth doors. These doors are too narrow and heavy for Ms. Kessler to open on her own when with her dog, as one arm must hold the dog on his leash. Furthermore, because the doors are narrow, the dog must follow behind her wheelchair, which has caused his leash to get stuck in her wheels. As described in paragraph 25, the Association's proposal to have building staff accompany Ms. Kessler along this route is not an acceptable option.

**ANSWER:** This Defendant admits that there are five doors but denies each and every each and every remaining allegation contained in paragraph 49 of the Plaintiff's Complaint.

50. The total distance of this route - measured from the freight elevator - is approximately 216 feet, far more than the 88 feet needed to travel along the Lobby Route, and the 115 feet needed to travel along the Fire Door Route.

15

**ANSWER:**     This Defendant denies each and every allegation contained in paragraph 50 of the Plaintiff's Complaint.

### 4.     Garage/Loading Zone Route That Fails to Meet Ms. Kessler's Needs

51.     Similarly, the Garage/Loading Zone Route is inaccessible and unsafe. From the freight elevator on the first floor, this route through the east wing of the building would require Ms. Kessler to enter and exit with her dog through the same dangerous and inaccessible garage and garage doors that are part of the Garage/Ramp Route, described above.

**ANSWER:**     This Defendant admits that a Garage/Loading Zone Route path has been proposed but denies each and every remaining allegation contained in paragraph 51 of Plaintiff's Complaint.

52.     In addition, this route is by far the longest of any proposed. It measures approximately 332 feet from the freight elevator, nearly four times the length of the Lobby Route, nearly three times the length of the Fire Door Route, and 135 feet (40%) longer than the Dog Route used by non-disabled owners. Furthermore, this route includes 236 feet within which traffic lanes of the garage itself, which equates to more time avoiding garage traffic, as well as increased risk. The danger would be heightened further whenever two cars were traveling in opposite directions, leaving less room for Ms. Kessler and her dog.

**ANSWER:**     This Defendant denies each and every allegation contained in paragraph 52 of the Plaintiff's Complaint.

53.     Ms. Kessler would also be grossly inconvenienced traveling so far to walk the dog.

16

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 53 of the Plaintiff's Complaint.

54. Furthermore, the door from the east wing into the garage leads directly into a loading zone. When a vehicle is parked in the loading zone, the view of other drivers is obstructed. This poses a danger to Ms. Kessler. In maneuvering her wheelchair and dog around the vehicle in the loading zone, she would risk not being observed by other drivers.

**ANSWER:** This Defendant admits that the door from the east wing into the garage leads into a loading zone but denies each and every remaining allegation contained in paragraph 54 of Plaintiff's Complaint.

### C. Retaliation Against Ms. Kessler for Exercise of Her Fair Housing Rights

55. On June 4, 2010, Ms. Kessler's attorney sent a letter to the Association's attorney. The letter explained how the routes proposed by the Association (the Garage/Ramp Route and the Garage/Loading Zone Route) were dangerous and inaccessible, and reaffirmed Ms. Kessler's request for a reasonable accommodation to enter and exit with her dog through the safe and accessible Lobby Route. A copy of this letter is attached as Exhibit C.

**ANSWER:** This Defendant states that the letter from the Plaintiff's attorney speaks for itself.

56. On June 17, 2010, the Association's attorney responded to the June 4 letter. This letter: (a) insisted that the Garage/Ramp Route and Garage/Loading Zone Route were safe; (b) claimed that use of the Lobby Route with a pet would be unsafe and unsanitary; and (c) demanded that Ms. Kessler "cease and desist from using the front lobby for ingress and egress with her dog on or before June 21, 2010." The letter also stated: "Ms. Kessler will be given notice of a violation on any future occasion upon which she (or any member of her family or

17

friends) is observed allowing her dog to urinate on areas prohibited for that purpose by the

Association rules." A copy of this letter is attached hereto as Exhibit D.

**ANSWER:** This Defendant states that the responding letter from its attorney speaks for itself.

57. This letter made clear the Association's treatment of Ms. Kessler was going to

change in a retributive way.

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 57 of the

Plaintiff's Complaint.

58. Indeed, soon after the letter of June 4 from Ms. Kessler's attorney ("Ms. Kessler's

June 4 Letter"), and upon issuance of the June 17 response letter from the Association's attorney

("Association's June 17 Letter"), there was a palpable difference in the Association's treatment

of Ms. Kessler and Mr. Vear.

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 58 of the

Plaintiff's Complaint.

59. On June 17, 2010, the same day as the Association's June 17 Letter, Ms. Kessler

received a "Notice of Fine" from the Board. The Board alleged that on June 16, 2010, Ms.

Kessler had allowed her dog to relieve itself in the lobby and entryway, without cleaning it up or

notifying building staff. The following condominium rules were quoted:

> Pet relief is prohibited on _all 401 East Ontario Property_, including, without limitation, the exterior building walls, landscaped areas, or the garage.

> If a pet has an accident soiling the common areas or the Association grounds, the pet owner shall clean it immediately and report it to the Management office for assistance. In the event the Management office is closed, report the incident tot he [sic] Doorstaff.

18

Pet owners' responsibilities include but are not limited to all costs of cleaning, repairing, or replacing common property due to the damages caused by their pets. (emphasis in original). A copy of the first Notice of Fine is attached as Exhibit E.

**ANSWER:** This Defendant states the Notice of Fine speaks for itself.

60. The Notice further stated that Ms. Kessler must pay a $100.00 fine, or, alternatively, that she could request a hearing to contest this violation.

**ANSWER:** This Defendant states that the Notice of Fine speaks for itself.

61. Since receipt of this Notice and the June 17 letter from the Association's attorney, Ms. Kessler has not once walked her dog on her own. Instead, she has relied on Mr. Vear and a dog walking company to walk her dog via the Dog Route.

**ANSWER:** This Defendant lacks sufficient information to form a belief about the truth of the allegations contained in paragraph 61 of the Plaintiff's Complaint.

62. The following day, June 18, 2010, Ms. Kessler received a second Notice of Fine. The Board alleged that on June 17, 2010, the dog had relieved itself in the back common area hallway, the accident had not been properly cleaned up, and building staff had not been notified. A copy of the second Notice of Fine is attached as Exhibit F.

**ANSWER:** This Defendant states that the Second Notice of Fine speaks for itself.

63. The fine for this second alleged offense was $100.00.

**ANSWER:** This Defendant states that the Second Notice of Fine speaks for itself.

64. On June 29, 2010, Ms. Kessler received a third Notice of Fine. The Board alleged that on June 11, 2010, Mr. Vear had allowed the dog to relieve itself outside the building at the dog door, without properly cleaning it up or notifying building staff. A copy of the third Notice of Fine is attached as Exhibit G.

19

**ANSWER:**     This Defendant states that the Third Notice of Fine speaks for itself.

65.     The Board did not send this Notice until 18 days after the alleged violation. Under the Condo Rules, such Notices are to be delivered to owners within 7 days of the alleged infraction.

**ANSWER:**     This Defendant admits that the letter was not sent until 18 days after the violation but denies each and every remaining allegation contained in paragraph 65 of the Plaintiff's Complaint, and further states that the Condo Rules speak for themselves..

66.     The Board decided to act upon this allegation, and issue the Notice, due to its decision, reflected in the Association's June 17 Letter, to treat Ms. Kessler in a punitive way.

**ANSWER:**     This Defendant denies each and every allegation contained in paragraph 66 of the Plaintiff's Complaint.

67.     The fine for this third alleged offense was $100.00

**ANSWER:**     This Defendant states that the Third Notice of Fine speaks for itself.

68.     On August 16, 2010, Ms. Kessler received a fourth Notice of Fine. The Board alleged that on August 5, 2010, the dog had relieved itself outside the building at the dog door, and that Mr. Vear had not properly cleaned it up or reported it to building staff. A copy of the fourth Notice of Fine is attached as Exhibit H.

**ANSWER:**     This Defendant states that the Fourth Notice of Fine speaks for itself.

69.     The fine for this fourth alleged offense was $300.00

**ANSWER:**     This Defendant states that the Fourth Notice of Fine speaks for itself.

20

70. On or about August 26, 2010, Ms. Kessler received a fifth Notice of Fine. The Board alleged that on August 25, 2010, the dog had relieved itself outside the building at the dog door and entryway, and that the accident had not been properly cleaned up and sanitized. A copy of the fifth Notice of Fine is attached as Exhibit I.

**ANSWER:** This Defendant states that the Fifth Notice of Fine speaks for itself.

71. The fine for this fifth alleged offense was $300.00.

**ANSWER:** This Defendant states that the Fifth Notice of Fine speaks for itself.

72. With the exception of the third Notice of Fine, the allegations in the violation notices are without merit.

**ANSWER:** This Defendant admits that the Third Notice of Fine was with merit but denies each and every remaining allegation contained in paragraph 72 of the Plaintiff's Complaint.

73. Ms. Kessler concedes that her dog has had accidents, but the accidents have been consistently and effectively cleaned up, and building staff has been notified. In fact, on June 17, 2010, the day Ms. Kessler received the first Notice of Fine, Mr. Vear asked John Hancko, the Property Manager, to detail how future accidents should be handled in order to avoid fines. Mr. Hancko told Mr. Vear to clean up the accident with paper towels, wipe the area with disinfecting wipes, and then notify building staff. Mr. Vear followed this directive, but violations were issued nonetheless.

**ANSWER:** This Defendant admits that on June 17, 2010, Mr. Vear and Mr. Hancko had a conversation but denies each and every remaining allegation contained in paragraph 73 of the Plaintiff's Complaint.

21

74.      Ms. Kessler requested hearings to contest Notices one, two, four and five. Two hearings have occurred related to these notices. At these hearings, the Board did not find for Ms. Kessler or strike any fines. To date, Ms. Kessler has paid $250 in fines.

**ANSWER:**      This Defendant denies that there have not been reductions in the fines issued to the Plaintiff. Further answering, this Defendant admits the remaining allegations contained in paragraph 74 of Plaintiff's Complaint.

75.      Prior to Ms. Kessler's June 4 Letter, the Board had never sent her a Notice of Fine. This was so even though her dog had occasional accidents in the building, which she ensured were cleaned up. It was only after Ms. Kessler, in her June 4 Letter, rejected the Garage/Ramp and Garage/Loading Zone Routes as unsafe, and reaffirmed her request to use the Lobby Route, that the Board began issuing violation notices.

**ANSWER:**      This Defendant admits that prior to June 4, 2010 this Defendant had never issued a Notice of Fine to the Plaintiff because of the Plaintiff's attorney's request to not issue any Notices of Fine until she reviewed this Defendant's accommodations with the Plaintiff. Further answering, this Defendant denies each and every remaining allegation contained in paragraph 75 of the Plaintiff's Complaint.

**D.      Request for an Accessible Parking Space as a Reasonable Accommodation**

76.      Ms. Kessler drives and owns a car. To park the car, Ms. Kessler needs a parking space that, upon opening the door, provides enough room to enable her to place her wheelchair in and remove her wheelchair from her vehicle. Ms. Kessler estimates that a space at least 10 feet wide would meet her needs.

**ANSWER:** This Defendant lacks sufficient information to form a belief about the truth of the allegations contained in paragraph 76 of the Plaintiff's Complaint.

77. The parking space deeded and assigned to Ms. Kessler is space 84 on the third floor of the parking garage. This space is less than 9 feet wide and hence too narrow. Because of this problem, when a car is parked too close to her parking space, she needs help getting into and out of her vehicle.

**ANSWER:** This Defendant admits that the parking space purchased and deeded to the Plaintiff is space 84 on the third floor of the parking garage and that this space is less than 9 feet wide. Further answering, this Defendant lacks sufficient information to form a belief about the truth of the remaining allegations contained in paragraph 77 of the Plaintiff's Complaint.

78. Prior to purchasing her unit, immediately after moving into her unit, and numerous times since then, Ms. Kessler has requested - both in writing and verbally - the reasonable accommodation of an accessible parking space. This request has continually been denied.

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 78 in the Plaintiff's Complaint.

79. The parking garage has five levels and 367 parking spaces. Most of the parking spaces in the garage are deeded to unit owners.

**ANSWER:** This Defendant admits the allegations contained in paragraph 79 of Plaintiff's Complaint.

80. The Association owns and controls some parking spaces. Upon information and belief, some of these spaces are accessible or could be made accessible.

23

**ANSWER:** This Defendant admits that it owns and controls some parking spaces but denies each and every remaining allegation contained in paragraph 80 of the Plaintiff's Complaint.

81. Upon information and belief, the Association owns and controls space 150, which is wide enough to accommodate Ms. Kessler's needs. In late May 2010, Ms. Kessler observed that Ms. La Rocca, the Assistant Property Manager, had parked in this space. At this time, Ms. La Rocca told Ms. Kessler that the Association would soon be in control of space 150.

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 81 of the Plaintiff's Complaint.

## V. COUNT I - VIOLATION OF THE FAIR HOUSING ACT

82. Ms. Kessler re-alleges and incorporates Paragraphs 1-81 as if fully set forth herein.

**ANSWER:** This Defendant restates its Answers to paragraphs 1 through 81 of the Plaintiff's Complaint as and for its Answer to paragraph 82 of the Plaintiff's Complaint, as if fully set forth herein.

83. Under the Fair Housing Amendments Act, it is unlawful '[t]o discriminate against any person in the terms, conditions, or privileges, of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a [disability] of - (A) that person; or (B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or (C) any person associated with that person." 42 U.S.C. § 3604(f)(2).

**ANSWER:** This Defendant admits that the Plaintiff has accurately cited a portion of the Fair Housing Amendments Act, which speaks for itself.

24

84.     Discrimination under the Act includes the refusal "to make reasonable accommodations in rules, policies, practices or services, when such accommodation may be necessary to afford [persons with disabilities] equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B).

**ANSWER:**     This Defendant admits that the Plaintiff has accurately cited a portion of the Fair Housing Amendments Act, which speaks for itself.

85.     It is also "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of ... any right granted or protected by" the Act. 42 U.S.C. § 3617.

**ANSWER:**     This Defendant admits that the Plaintiff has accurately cited a portion of the Fair Housing Amendments Act, which speaks for itself.

86.     Ms. Kessler is a person with a disability under the Act. *See* 42 U.S.C. § 3602(h).

**ANSWER:**     This Defendant admits the allegations contained in paragraph 86 of Plaintiff's Complaint.

87.     Ms. Kessler has requested a reasonable accommodation to the condominium rule that requires owners, when with their dogs, to enter and exit the building through the Dog Route, which is not accessible. She has asked for permission to use the Lobby Route, which is accessible, and on information and belief, used by at least one other resident in the past, or the Fire Door Route, which she offered to make accessible at her own expense.

**ANSWER:**     This Defendant admits that the Plaintiff has made requests for an alternative route, but denies that reasonable accommodations have not been made.

25

88.     Ms. Kessler's use of the Lobby Route or Fire Door Route would impose no financial or administrative burden on the Association, nor fundamentally alter the nature of the condominium.

**ANSWER:**     This Defendant denies each and every allegation contained in paragraph 88 of the Plaintiff's Complaint.

89.     Because the Association has refused to approve Ms. Kessler's use of these routes, and instead insisted that she travel along the routes in the garage that are inaccessible and dangerous, it has discriminated against Ms. Kessler in violation of the Act.

**ANSWER:**     This Defendant denies each and every allegation contained in paragraph 89 of the Plaintiff's Complaint.

90.     Ms. Kessler has also requested that the Association provide her with an accessible parking space, as a reasonable accommodation.

**ANSWER:**     This Defendant admits that the Plaintiff has requested that her parking space be changed, but denies each and every remaining allegation contained in paragraph 90 of Plaintiff's Complaint.

91.     The provision of such a space is within the power of the Association, as spaces it owns and controls are accessible or could be made accessible.

**ANSWER:**     This Defendant denies each and every allegation contained in paragraph 91 of the Plaintiff's Complaint.

92.     The Association's failure to provide Ms. Kessler with an accessible parking space constitutes discrimination under the Act.

26

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 91 of the Plaintiff's Complaint.

93. The Association's issuance of violation notices against Ms. Kessler, wrongfully alleging that she has breached condominium rules, is an effort to coerce, intimidate, threaten, and interfere with Ms. Kessler's exercise and enjoyment of her fair housing rights in contravention of the Act. The issuance of these violations only began after Ms. Kessler attempted to exercise her legal rights and requested a reasonable accommodation.

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 93 of the Plaintiff's Complaint.

94. At all times relevant to this action, the Association has acted intentionally, willfully and/or in reckless disregard for the rights of Ms. Kessler.

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 89 of the Plaintiff's Complaint.

WHEREFORE, the Defendant, BOARD OF DIRECTORS OF THE 401 E. ONTARIO CONDOMINIUM ASSOCIATION, denies that it has discriminated against the Plaintiff, ALLISON KESSLER, and denies that the Plaintiff is entitled to preliminary and permanent injunctions, actual damages, punitive damages, and/or attorney's fees against it and prays for judgment in its favor and against the Plaintiff, ALLISON KESSLER, plus costs of suit.

**THIS DEFENDANT DEMANDS TRIAL BY JURY.**

### VI. COUNT II: VIOLATION OF THE ILLINOIS CONDOMINIUM PROPERTY ACT

95. Ms. Kessler re-alleges and incorporates by reference Paragraphs 1-94 as if fully set forth herein.

27

**ANSWER:** This Defendant restates its Answers to paragraphs 1 through 94 of the Plaintiff's Complaint as and for its Answer to paragraph 95 of the Plaintiff's Complaint, as if fully set forth herein.

96. As a condominium created in Illinois, the Association is subject to the requirements of the Illinois Condominium Property Act, 765 ILCS 605/2.1.

**ANSWER:** This Defendant admits the allegations contained in paragraph 96 of Plaintiff's Complaint.

97. The Act requires the Association '[t]o reasonably accommodate the needs of a [disabled] unit owner as required by the Federal Civil Rights Act of 1968 [the Fair Housing Act] ... in the exercise of its powers with respect to the use of common elements..." 765 ILCS 605/18.4(q).

**ANSWER:** This Defendant admits that the Plaintiff has accurately cited a portion of the Illinois Condominium Property Act, which speaks for itself.

98. In performing its responsibilities, the Act requires the Association and its board to "exercise the care required of a fiduciary of the unit owners." 765 ILCS 605/18.4

**ANSWER:** This Defendant admits that the Plaintiff has accurately cited a portion of the Illinois Condominium Property Act, which speaks for itself.

99. By failing to approve Ms. Kessler's reasonable accommodation requests, the Association has breached its duty to reasonably accommodate the needs of a unit owner with a disability, and breached its duty of care in its operation of the common elements, in violation of the Act.

28

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 99 of the Plaintiff's Complaint.

WHEREFORE, the Defendant, BOARD OF DIRECTORS OF THE 401 E. ONTARIO CONDOMINIUM ASSOCIATION, denies that it has discriminated against the Plaintiff, ALLISON KESSLER, and denies that the Plaintiff is entitled to preliminary and permanent injunctions, actual damages, punitive damages, and/or attorney's fees against it and prays for judgment in its favor and against the Plaintiff, ALLISON KESSLER, plus costs of suit. **THIS DEFENDANT DEMANDS TRIAL BY JURY.**

## VII. <u>COUNT III: INJUNCTIVE RELIEF</u>

100. Ms. Kessler re-alleges and incorporates Paragraphs 1-99 as if fully set forth herein.

**ANSWER:** This Defendant restates its Answers to paragraphs 1 through 99 of the Plaintiff's Complaint as and for its Answer to paragraph 100 of the Plaintiff's Complaint, as if fully set forth herein.

101. Injunctive relief is authorized in this case pursuant to 42 U.S.C. § 3613(c)(1).

**ANSWER:** This Defendant denies each and every allegation contained in paragraph 101 of the Plaintiff's Complaint.

102. Ms. Kessler has suffered and continues to suffer irreparable injury, for which there is no adequate remedy at law, by virtue of the Association's failure to reasonably accommodate her needs and its retaliation against her for exercise of her legal rights.

A. Declare the Defendant's acts and omissions constitute illegal discrimination under the Fair Housing Amendments Act, 42 U.S.C. § 3604(f)(3)(B);

29

B.      Issue a permanent injunction requiring Defendant to allow Plaintiff use of the Lobby Route or Fire Door Route when with her dog;

C.      Issue a permanent injunction requiring Defendant to provide or create an accessible parking space for Plaintiff's exclusive use;

D.      Permanently enjoin Defendant from enforcing any and all fines issued against the Plaintiff since March 1, 2010, and acting upon any and all pending violation notices issued against the Plaintiff since March 1, 2010;

E.      Award Plaintiff her actual damages, including pain and suffering resulting from Defendant's illegal discrimination;

F.      Award Plaintiff punitive damages as a result of Defendant's willful, malicious or reckless conduct;

G.      Award Plaintiff her reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)2); and

H.      Grant any other relief this Court deems appropriate.

**ANSWER:**     This Defendant denies each and every allegation contained in paragraph 102 of the Plaintiff's Complaint.

A.      This Defendant denies that the Plaintiff is entitled to the relief requested in Paragraph (A) of the Plaintiff's Prayer for Relief.

B.      This Defendant denies that the Plaintiff is entitled to the relief requested in Paragraph (B) of the Plaintiff's Prayer for Relief.

C.      This Defendant denies that the Plaintiff is entitled to the relief requested in Paragraph (C) of the Plaintiff's Prayer for Relief.

30

D.     This Defendant denies that the Plaintiff is entitled to the relief requested in Paragraph (D) of the Plaintiff's Prayer for Relief.

E.     This Defendant denies that the Plaintiff is entitled to the relief requested in Paragraph (E) of the Plaintiff's Prayer for Relief.

F.     This Defendant denies that the Plaintiff is entitled to the relief requested in Paragraph (F) of the Plaintiff's Prayer for Relief.

G.     This Defendant denies that the Plaintiff is entitled to the relief requested in Paragraph (G) of the Plaintiff's Prayer for Relief.

H.     This Defendant denies that the Plaintiff is entitled to the relief requested in Paragraph (H) of the Plaintiff's Prayer for Relief.

WHEREFORE, the Defendant, BOARD OF DIRECTORS OF THE 401 E. ONTARIO CONDOMINIUM ASSOCIATION, denies that it has discriminated against the Plaintiff, ALLISON KESSLER, and denies that the Plaintiff is entitled to preliminary and permanent injunctions, actual damages, punitive damages, and/or attorney's fees against it and prays for judgment in its favor and against the Plaintiff, ALLISON KESSLER, plus costs of suit.

**THIS DEFENDANT DEMANDS TRIAL BY JURY.**

**AFFIRMATIVE DEFENSES**

NOW COMES the Defendant, BOARD OF DIRECTORS OF THE 401 E. ONTARIO CONDOMINIUM ASSOCIATION, by and through its attorneys, KEVIN W. DOHERTY, BRIAN T. GINLEY, and DOHERTY & PROGAR LLC, and for its Affirmative Defenses to Plaintiff's Complaint states as follows:

31

### FIRST AFFIRMATIVE DEFENSE

The two dog routes proposed by this Defendant meet the requirements for a reasonable accommodation under the Fair Housing Amendments Act.

### SECOND AFFIRMATIVE DEFENSE

The two dog routes proposed by the Plaintiff would create an undue financial hardship and administrative burden on this Defendant including, but not limited to, ingress/egress issues, safety issues for the other residents of the building, and a possible violation of the City of Chicago Fire Code with respect to the Fire Door Route, and as such, are not reasonable accommodations.

### THIRD AFFIRMATIVE DEFENSE

This Defendant does not own and/or control any parking spaces which Plaintiff describes as accessible.

### FOURTH AFFIRMATIVE DEFENSE

Under the 401 East Ontario Condominium Rules and Regulations, pet relief is prohibited on all of this Defendant's property, including, without limitation, the exterior building walls, landscaped areas, and the garage, and pet owners will be fined for pet relief anywhere on this Defendant's property.

### FIFTH AFFIRMATIVE DEFENSE

This Defendant acted at all times without malice or discriminatory intent and as a result is not subject to punitive damages.

### SIXTH AFFIRMATIVE DEFENSE

The Plaintiff is not entitled to the injunctive relief requested.

32

### SEVENTH AFFIRMATIVE DEFENSE

This Defendant reserves the right to assert additional applicable affirmative defenses as it becomes aware of these defenses from the discovery in this matter.

WHEREFORE, this Defendant requests judgment in its favor as follows:

(a)     that Plaintiff's Complaint be dismissed in its entirety *with prejudice* and that Plaintiff take nothing thereby;

(b)     that this Defendant be awarded costs incurred herein;

(c)     that this Defendant be awarded reasonable attorneys' fees incurred herein to the full extent permitted by law; and

(d)     that this Defendant be awarded any further relief that this court deems just and proper.

Respectfully submitted,

BOARD OF DIRECTORS OF THE 401 E.
ONTARIO CONDOMINIUM
ASSOCIATION

By: /s/ Kevin W. Doherty
        One of its Attorneys

Kevin W. Doherty (ARDC #3128844)
Brian T. Ginley (ARDC #6278308)
DOHERTY & PROGAR LLC
200 West Adams Street, Suite 2220
Chicago, IL 60606
(312) 630-9630
(312) 630-9001 - Fax

33